UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LIONEL GIBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-cv-00280-JMS-MJD |
| | ) |
| MARLA GADBERRY, LOLIT JOSEPH, | ) |
| JOHN B. CLARKSON, | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Defendants' Amended Motion for Summary Judgment**

Plaintiff Lionel Gibson filed this civil action pursuant to 42 U.S.C. § 1983 against a variety of defendants alleging that they are liable to him because they provided him with inadequate medical treatment. There are three defendants remaining in this action: Marla Gadberry, Lolit Joseph, M.D. and John Clarkson, M.D. Mr. Gibson alleges that these defendants violated his Eighth Amendment rights through their deliberate indifference to his scalp condition. There is also a state law tort claim against Ms. Gadberry. All other claims and defendants have been dismissed.[1] The defendants seek resolution of the remaining claims through summary judgment. For the reasons explained below, Ms. Gadberry is entitled to judgment in her favor on all claims while the claims against Dr. Joseph and Dr. Clarkson cannot be resolved through summary judgment. Accordingly, the amended motion for summary judgment [dkt. 127] is **granted in part and denied in part.**

---

[1] *See i.e.*, dkt 181, Stipulation of Dismissal; dkt. 172, Entry Discussing State Law Medical Malpractice Claims.

# I.
# Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# II.
# Application of Local Rules

As a preliminary matter, the defendants argue in their reply brief that the plaintiff's response violates the Local Rules of this Court. While it is "well established that pro se litigants are not excused from compliance with procedural rules," *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), whether the Court holds pro se litigants to the consequences of violating the Court's Local Rules is a matter of discretion. *Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir.

2

2016) (holding that district courts are not required to hold pro se litigants to the potential consequences of their failure to comply with the Local Rules and can instead take "a more flexible approach," including by ignoring the deficiencies in their filings and considering the evidence they submit). In this case, the Court chooses to take the more flexible approach, and overlooks the page limit violation and other errors in formatting.

### III.
### Eighth Amendment

Mr. Gibson asserts Eighth Amendment medical care claims against the defendants. At all times relevant to Mr. Gibson's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner." *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005). The Seventh Circuit recently tackled this issue in *Petties v. Carter*, writing:

3

> To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) (*citing Farmer*, 511 U.S. at 842, 114 S.Ct. 1970). For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur. *Id.* at 992. But showing mere negligence is not enough. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice."). Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim. *Farmer*, 511 U.S. at 836–38, 114 S.Ct. 1970. Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm. *Id*. at 837, 114 S.Ct. 1970. Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety. *Id*. at 844, 114 S.Ct. 1970.

No. 14-2674, 2016 WL 4631679, at *3 (7th Cir. Aug. 23, 2016). There is no doubt that this is a high standard for any plaintiff to meet. However, to survive summary judgment the plaintiff need not prove his case. Instead, the plaintiff is only required to present "evidence from which a reasonable jury could infer a doctor knew he was providing deficient treatment." *Id.* at *1.

For the reasons explained below, Mr. Gibson has met this burden as to Dr. Joseph and Dr. Clarkson, but not as to Ms. Gadberry.

## IV.
## Dr. Joseph and Dr. Clarkson

Dr. Joseph and Dr. Clarkson argue that they are not liable to Mr. Gibson and that they treated his scalp condition appropriately. Dr. Joseph's treatment of Mr. Gibson began on May 15, 2012, and continued through May 20, 2013. During the time, Dr. Joseph saw Mr. Gibson regularly and prescribed hydrocortisone cream, Lamisil oral tablets, Selsun shampoo (selenium sulfide), miconazole nitrate 2% cream, bactrim oral tablets, and griseofulvin. Because some antifungal medications can damage the liver, laboratory tests were ordered to check the health of Mr.

4

Gibson's liver. Dr. Clarkson asserts that the care he provided on one or two occasions was appropriate. Based on this evidence, a jury could conclude that the treatment Dr. Joseph and Dr. Clarkson provided was constitutionally adequate. But that is not the only plausible conclusion.

The following facts in dispute necessitate the denial of summary judgment.

First, whether Mr. Gibson's scalp condition is a serious medical need is a fact in dispute. Mr. Gibson has presented evidence which reflects that his skin condition is a serious medical need. He states that the rash is painful and is spreading. He received treatment, including prescription medications for this condition. The defendants do not dispute this element for the purposes of summary judgment, but they may do so at trial.

Second, fact issues exist as to whether Dr. Joseph knew that she was persisting in an inadequate course of treatment. Dr. Joseph states:

> Based upon my review of the medical records . . . it is my opinion, within a reasonable degree of medical certainty, that the care provided to Mr. Gibson for his scalp condition meets or exceeds the standard of care exercised by like medical professionals under similar circumstances. Mr. Gibson was immediately and repeatedly seen, and he has been monitored and provided appropriate care for his condition based on his symptoms. He was given different combinations of medications in an attempt to alleviate his condition. The patient also had lab work done and a scrape biopsy performed.

Dr. Joesph's Declaration, Dkt. 66-1 at p. 2. Dr. Joseph regularly evaluated Mr. Gibson and provided care, but the Seventh Circuit has repeatedly "rejected the notion that the provision of some care means the doctor provided medical treatment which meets the basic requirements of the Eighth Amendment." *Petties*, 2016 WL 4631679, at *5.

Dr. Joseph's testimony that Mr. Gibson received adequate care is not supported by testimony from a specialist, nor is there any evidence that the doctor's treatment decisions were consistent with an existing protocol. *Pettis,* at *4. Her testimony in this regard is not enough. The

5

Seventh Circuit has reversed a district court for relying on a defendant as the expert witness. *Rowe v. Gibson*, 798 F.3d 622, 630-31 (7th Cir. 2015) ("Allowing [defendant doctor] to be an expert witness in the case despite his being a defendant and not practicing the medical specialty at issue was another boost to the plaintiff's case." *Id.* at 631.)

In addition, a jury could conclude that Dr. Joseph was persisting in a course of treatment known to be ineffective; that is, continuing to prescribe the same course of treatment over the course of a year where the rash would improve initially with oral anti-fungal treatments, but then would spread to a much larger area eventually covering Mr. Gibson's entire scalp. In particular, Dr. Joseph prescribed miconazole nitrate 2% for Mr. Gibson's scalp infection even though the box the medication came in specifically stated that it should not be used on the scalp. Mr. Gibson testified that the cream caused the rash to spread and inflame. Dr. Joseph testified that this medication is appropriate when prescribed by a doctor. The Seventh Circuit, however, has disregarded similar testimony, stating that there is no reason for the manufacturer to lie and that the court should not conclude that the defendant doctor knows more about the proper use of a medication than the manufacturer. *Rowe*, 798 F.3d at 625 ("There is thus no reason for the manufacturer to be lying, and it would be absurd to think that Dr. Wolfe, a defendant who is not a gastroenterologist, knows more about treatment of esophagitis with Zantac than the manufacturer does.").

Similarly, Dr. Joseph performed a scrape biopsy of Mr. Gibson's scalp on November 14, 2012. The cultures came back negative for fungus. Despite these results, no further testing was

done and Dr. Joseph continued to treat Mr. Gibson for a fungal infection.[2] In addition, Mr. Gibson testified that he was informed that the test results came back positive which misled him regarding the treatment he should advocate to receive. As a result, Mr. Gibson continued to receive anti-fungal medications which have or can have significant negative side effects.

Mr. Gibson also testified that there were months when the only treatment he received was shampoo which caused him discomfort because the rash spread, itched and bled terribly.

The third and final fact in dispute is whether Dr. Joseph and Dr. Clarkson misreported Mr. Gibson's symptoms in Mr. Gibson's medical records in order to justify their inappropriate treatment decisions. Specifically, on September 4, 2013, Mr. Gibson states that he saw Dr. Clarkson who became angry because Mr. Gibson called him weird and unprofessional. Dr. Clarkson told Mr. Gibson that he was healed, documented that the lesions were healed even though Mr. Gibson's scalp was bad, and discontinued Mr. Gibson's medication. Mr. Gibson testified that on a few occasions, Dr. Joseph also noted that his symptoms were improving when they were not, in an effort to justify her treatment decisions.

Dr. Joseph and Dr. Clarkson deny Mr. Gibson's claims. But at this stage in the proceeding, the question is not whether Mr. Gibson should be believed but whether Mr. Gibson has produced sufficient evidence for a jury to conclude that the doctors knew the care they were providing was insufficient. Mr. Gibson has met this burden. Given the facts presented by Mr. Gibson, Dr. Joseph and Dr. Clarkson are not entitled to summary judgment.

---

[2] A punch biopsy performed on July 23, 2014, after Mr. Gibson was transferred to Westville Correctional Facility indicated that Mr. Gibson had focal dermal fibrosis and perifollicular inflammation. The findings were negative for fungal elements.

## V.
## Ms. Gadberry

Ms. Marla Gadberry also seeks summary judgment in her favor. Given the following undisputed facts, she is entitled to judgment as a matter of law on all claims alleged against her. There is no evidence to support that she is responsible for any injury to Mr. Gibson or that she participated in any wrongdoing. Lawsuits under 42 U.S.C. § 1983 against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003).

It is undisputed that Ms. Gadberry was employed by Corizon as the Health Services Administrator ("HSA") at Wabash Valley Correctional Facility while Mr. Gibson was an inmate there. As the HSA, Ms. Gadberry was responsible for certain administrative tasks. She is not a licensed doctor and she did not provide any medical treatment to Mr. Gibson. Ms. Gadberry did not evaluate Mr. Gibson, prescribe medications, or order treatments. As the HSA, Ms. Gadberry was not responsible for reviewing health care requests, but only to ensure that they were being processed by the staff. Likewise, she did not review informal grievances. She could not prescribe any medications. The treatment and medications received by Mr. Gibson were based entirely on the medical judgment of the medical doctors and it was not Ms. Gadberry's job to second guess or override their decisions.

Mr. Gibson argues that Ms. Gadberry is liable because she assisted in ordering or prescribing anti-fungal cream, Lamisil AT, but the evidence does not support Mr. Gibson's claim. Instead the record reflects that Mr. Gibson submitted an informal grievance to Ms. Gadberry in October 2012. When Mr. Gibson did not receive a response he filed a formal grievance. In that grievance he states that the antifungal cream he was ordered states on the box that it is not for use

on the scalp. Dkt. 66-3. The grievance officer forwarded this concern to Ms. Gadberry. Ms. Gadberry responded that Mr. Gibson is prescribed miconazole antifungal cream and that "[i]t is not effective on the scalp per literature." The grievance specialist asked Ms. Gadberry to review the issue with the physician to see if an alternative cream can be ordered. *Id.* The record reflects that Dr. Joseph believed the medication was appropriate and that the box was incorrect. Given this record, Ms. Gadberry's actions were appropriate and there is no wrongdoing that can be attributed to her.

The fact that Mr. Gibson may have sent an informal grievance to Ms. Gadberry is insufficient to subject her to liability given her responsibilities at the prison and because Mr. Gibson was under the care of treating physicians. In addition, Mr. Gibson's informal grievance was not ignored. Instead he was directed to fill out a health care request form and to discuss his health care issues with the doctor. Dkt. 93-1 at p. 18-26. This response was appropriate.

> "If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."

Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (*quoting Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

There is no plausible basis to conclude that Ms. Gadberry was responsible for any injury suffered by Mr. Gibson. Accordingly, Mrs. Gadberry is entitled to judgment as a matter of law on all claims alleged against her.

## VI.
## Conclusion

The defendants' motion for summary judgment [dkt. 127] is **granted in part and denied in part.** Ms. Gadberry is entitled to judgment in her favor on all claims. There are material facts in dispute regarding the Eighth Amendment claims against Dr. Joseph and Dr. Clarkson such that summary judgment in their favor must be denied. The claims against Dr. Joseph and Dr. Clarkson shall proceed in this action. These claims shall be resolved either by settlement or trial.

The Court will renew its efforts to recruit counsel to represent the plaintiff in this action.

**IT IS SO ORDERED.**

Date: October 20, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

LIONEL GIBSON
104608
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
BUNKER HILL, IN 46914